IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JESSE PEREZ,

      Plaintiff,

   v.

J. PRELIP, Senior Special Agent
and Officers A. GATES, S.
BURRIS, D. GONGORA, E. HEALY
and G. PIMENTEL,

      Defendants.

Case No.: C 13-5359 CW (PR)

ORDER OF SERVICE

Plaintiff Jesse Perez, an inmate at Pelican Bay State Prison
(PBSP), filed a pro se civil rights action pursuant to 42 U.S.C.
§ 1983 alleging that staff at PBSP violated his constitutional
rights.  Plaintiff has also moved for leave to proceed in forma
pauperis (IFP).  The Court finds that Plaintiff's IFP application
is complete and grants it in a separate Order.  The Court
addresses Plaintiff's claims.

DISCUSSION

I.   Standard of Review

A federal court must conduct a preliminary screening in any
case in which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity.  28 U.S.C.
§ 1915A(a).  In its review, the court must identify any cognizable
claims and dismiss any claims that are frivolous, malicious, fail
to state a claim upon which relief may be granted or seek monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right.  Lemire v. Cal. Dep't Corrections & Rehabilitation, 756 F.3d 1062, 1074 (9th Cir. 2013); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. Leer, 844 F.2d at 633.  Under no circumstances is there respondeat superior liability under § 1983.  Lemire, 756 F.3d at 1074.  Or, in layman's terms, under no circumstances is there liability under § 1983 solely because one is responsible for the actions or omissions of another.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984).

United States District Court
For the Northern District of California

II.  Plaintiff's Allegations

Plaintiff alleges the following.  In 2006, Plaintiff filed a lawsuit in the Eastern District of California against multiple Institutional Gang Investigators (IGI) and other employees of the California Department of Corrections and Rehabilitation (CDCR)[1] for due process violations arising from the defendants' unconstitutional validation, segregation and placement of Plaintiff in the Secured Housing Unit (SHU) because he was validated as a gang associate.  The district court denied the defendants' motion for summary judgment based on qualified immunity and, on October 15, 2010, the defendants appealed this decision.  The Ninth Circuit appointed counsel to represent Plaintiff.  On October 2, 2012, Plaintiff's attorneys informed him that the defendants expressed an interest in entering into settlement negotiations.  Plaintiff's settlement terms included payment of damages and a new initial validation procedure for Plaintiff that followed the new regulations.  In return, Plaintiff would dismiss his lawsuit.  Plaintiff agreed to negotiate with the defendants.  On October 9, 2012, the Ninth Circuit granted the parties' joint motion to postpone oral argument pending settlement negotiations.

On October 10, 2012, the day after the Ninth Circuit granted a continuance, Defendants Officers Gates, Gongora, Healy and Pimentel ordered Plaintiff to come to the front of his cell and "strip down."  Officer Gates told Plaintiff they were conducting a cell search.  After Officer Gates performed a visual inspection of

---

[1]None of the Defendants in this lawsuit are defendants in the Eastern District lawsuit.

United States District Court
For the Northern District of California

Plaintiff while he was naked, he ordered Plaintiff to get dressed in his boxer shorts and shower-shoes only.  Officer Gates placed Plaintiff in handcuffs and then Officers Gates, Gongora, Healy and Pimentel escorted him to a short distance from a holding cell and took photographs of Plaintiff's face and body.  The officers then placed Plaintiff in the same holding cell as his cellmate, inmate Guerrero.  Inmate Guerrero told Plaintiff that Officer Healy had asked him if he was into filing lawsuits, too.  Inmate Guerrero told Officer Healy, "No," and Officer Healy said, "Good for you, keep it that way."

After approximately twenty to twenty-five minutes, Officers Gates and Pimentel returned to the holding cell and ordered Plaintiff and inmate Guerrero to cuff up.  Plaintiff told Officer Gates that he needed his property and paperwork because his lawsuit was still pending.  Officer Gates replied, "Oh yeah, about that.  You might've been able to collect from us but get comfortable because we're going to make sure you stay here where you belong and as for your property, don't worry, we'll get it to you by tomorrow or so."

When Plaintiff and inmate Guerrero returned to their cell, they found it completely trashed and their books, papers, folders, envelops, and other items were missing.  Plaintiff found a cell search receipt signed by Officers Pimentel, Gates and Gongora indicating that Plaintiff's paperwork was confiscated for review by IGI.  The following day, Officer Pimentel returned some of Plaintiff's property along with a cell search receipt which stated that two address books, twelve personal photographs, and three pages of addresses were confiscated.  Plaintiff's legal files and records were disorganized and missing pages.

On October 11, 2012, the CDCR issued a memorandum setting forth its new procedures for validating gang members.  The new procedures provide that gang associates would no longer be considered for administrative placement into the SHU based upon their validation to a gang, unless there was also disciplinary behavior.

On October 21, 2012, Plaintiff was issued a rules violation report (RVR), authorized by Officer Gates, for willfully resisting and obstructing peace officers.  Officer Gates falsified this report.  Plaintiff plead not guilty at his RVR hearing.  The Senior Hearing Officer agreed with Plaintiff, found Plaintiff not guilty and dismissed the RVR.

On November 28, 2012, Plaintiff learned that Defendant Prelip had contacted Defendants to set in motion the validation process. This process was purportedly required by the settlement of the Eastern District lawsuit, but the settlement had not been signed at that time.

On December 20, 2012, Officer Burris notified Plaintiff that he had completed an investigation into Plaintiff's gang status "as though Plaintiff had never been validated as an affiliate of a prison gang, ensuring due process was met per CDCR policy." However, Officer Burris conducted his investigation under the old, less favorable validation procedures.

On January 15, 2013, Officer Burris was required to re-initiate the validation process, and again he used the old, obsolete validation procedure.  Plaintiff wrote a written rebuttal to all the source items upon which Officer Burris had relied to find that Plaintiff was a gang associate.

United States District Court
For the Northern District of California

On April 5, 2013, Plaintiff's attorneys in the Eastern District case sent him the settlement agreement for his review. On April 22, 2013, Plaintiff executed the settlement agreement. On June 25, 2013, the Eastern District defendants executed the agreement.  On June 26, 2013, Correctional Counselor T. Adams served Plaintiff with a chrono indicating that Officer Burris' gang investigation and findings, which had been performed under the old procedures, complied with the negotiated settlement agreement.  Plaintiff contacted Warden Lewis to inform him that the validation procedure violated the terms of the settlement agreement.

On August 1, 2013, Plaintiff's attorneys informed him that the gang validation was not done in accordance with the settlement agreement.  They stated that they had discussed the matter with Deputy Attorney General Kenneth T. Roost, opposing counsel in the Eastern District case, who agreed to call his clients to clarify CDCR's obligations under the settlement agreement.  Mr. Roost agreed that the validation procedure conducted by Officer Burris did not satisfy CDCR's obligations under the settlement agreement.

Even though the new procedures do not require placement in the SHU for validation as a gang associate, Plaintiff has been in the SHU since 2003 because of his gang associate validation.

Based on these allegations, Plaintiff asserts a First Amendment retaliation claim and a conspiracy claim against all Defendants.

A. First Amendment Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate;

(2) because of; (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Construed liberally, Plaintiff alleges a First Amendment retaliation claim against Defendants.

B. Conspiracy Claim

To state a claim for a conspiracy to violate one's constitutional rights under 42 U.S.C. § 1983, a plaintiff must state specific facts to support the existence of the claimed conspiracy. Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004) (internal quotation and citation omitted). Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim. Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). Rather, a plaintiff must plead with particularity which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights. Harris v. Roderick, 126 F.3d 1189, 1195-96 (9th Cir. 1997). To prove a conspiracy under § 1983, an "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989).

Although Plaintiff does not specifically allege a meeting of the minds between Defendants, liberally construed his allegations state a claim based on a conspiracy to retaliate against him for exercising his First Amendment rights.

United States District Court
For the Northern District of California

III. Plaintiff's Request for Preliminary Injunction

Plaintiff seeks a preliminary injunction requiring Defendants to (1) cease harassing him and retaliating against him; (2) return the property that they confiscated from his cell; and (3) expunge from his file any reference to his validation as a gang member.

The decision of whether to grant or deny a motion for preliminary injunction is a matter of the district court's discretion. Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Under the traditional test for granting preliminary injunctive relief, a plaintiff must: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring the plaintiff; and (4) show that granting the injunction favors the public interest. Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). Alternatively, a plaintiff may demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir. 1990). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Id.

Prior to granting a preliminary injunction, however, notice to the adverse party is required. See Fed. R. Civ. P. 65(a)(1). "The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such

opposition." <u>Klaus v. Hi-Shear Corp.</u>, 528 F.2d 225, 235 (9th Cir. 1975), <u>overruled on other grounds as recognized in</u> <u>Stahl v. Gibraltar Fin. Corp.</u>, 967 F.2d 335, 337 (9th Cir. 1992).

Immediate injunctive relief, such as a temporary restraining order, may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. <u>See</u> Fed. R. Civ. P. 65(b).  Although Plaintiff swears that the information contained in his complaint is true and correct, and thus the complaint may be deemed an affidavit, and although the pleadings describe Plaintiff's circumstances with a fair amount of specificity, it does not clearly appear from the pleadings that Plaintiff will suffer immediate injury before Defendants can be given an opportunity to respond.

In light of these circumstances, the Court orders service of the pleadings, as indicated below, and directs Defendants to respond to Plaintiff's request for a preliminary injunction.

Therefore, Plaintiff's request for a preliminary injunction is denied without prejudice.  Defendants shall respond to the request for a preliminary injunction in their dispositive motion.

United States District Court

For the Northern District of California

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's request for a preliminary injunction is DENIED.

2.   Plaintiff's First Amendment retaliation claim and conspiracy claim against all Defendants are cognizable and will be served.   The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (docket no. 1) and all attachments thereto, a copy of this Order and a copy of the form "Consent or Declination to Magistrate Judge Jurisdiction" to PBSP Officers Gates, Burris, Gongora, Healy and Pimentel and Special Agent Prelip.   The Clerk shall also mail a copy of the complaint and a copy of this Order to the California Attorney General's Office.   Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

3.   Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for the failure to sign and return the waiver forms.   If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before sixty days from the date on which the request for

waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)

Defendants are advised to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the answer shall be due sixty days from the date on which the request for waiver was sent or twenty days from the date the waiver form is filed, whichever is later.

4.  Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

a.  No later than thirty days from the date the answer is due, Defendants shall file a motion for summary judgment or other dispositive motion and opposition to Plaintiff's motion for a preliminary injunction.  If Defendants file a motion for summary judgment, it shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

At the time of filing the motion for summary judgment or other dispositive motion, Defendants shall comply with the Ninth Circuit's decisions in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), and Stratton v. Buck, 697 F.3d 1004 (9th Cir. 2012), and provide Plaintiff with notice of what is required of him to oppose a summary judgment motion or a motion to dismiss.

b.   Plaintiff's opposition to the motion for summary judgment or other dispositive motion shall be filed with the Court and served on Defendants no later than twenty-eight days after the date on which Defendants' motion is filed.

Before filing his opposition, Plaintiff is advised to read the notice that will be provided to him by Defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' summary judgment motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c.   Defendants shall file a reply brief no later than fourteen days after the date Plaintiff's opposition is filed.

d.   The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

5.   Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.

6.   All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

United States District Court
For the Northern District of California

7.  It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

8.  Extensions of time are not favored, though reasonable extensions will be granted.  Any motion for an extension of time must be filed no later than fourteen days prior to the deadline sought to be extended.

IT IS SO ORDERED.

Dated: 4/2/2014

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE