UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE PEREZ,<br>　　　　　Plaintiff,<br>　　v.<br>A. GATES, et al.,<br>　　　　　Defendants. | Case No. 13-cv-05359-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 72 |

　　　　Jesse Perez has sued several correctional officers at Pelican Bay State Prison under 42 U.S.C. § 1983, alleging they retaliated against him (and conspired to retaliate against him) for exercising his First Amendment rights.  Specifically, Perez asserts that the defendants, who worked in the Institutional Gang Investigations ("IGI") unit at Pelican Bay, retaliated against him for filing a lawsuit against the California Department of Corrections, participating in hunger strikes, and publishing negative articles about the Department's incarceration policies.  And he contends the retaliation took a number of forms, which can be broken down into three categories: (1) conducting an unscheduled and unauthorized gang validation proceeding, which delayed a new gang validation proceeding to which Perez was entitled under a settlement agreement with the Department of Corrections; (2) searching through and disrupting the contents of Perez's cell and confiscating his personal property, including drafts of articles he had written criticizing prison conditions and legal papers relevant to his litigation against the Department of Corrections; and (3) filing a false rules violation report ("RVR") against Perez in connection with the search.

　　　　The defendants have moved for summary judgment.  The Court rules as follows with respect to all defendants except Burris:  The motion is denied for Perez's claims that the officers violated his First Amendment rights when they searched his cell and issued the RVR in the wake of that search.  The motion is granted with respect to the defendants' decision to conduct the gang validation proceeding.

　　　　For Burris, the motion is granted with respect to the decision to conduct the gang

1   validation proceeding.  The motion is also granted in part with respect to the search itself and the
2   RVR, but not as to the confiscation of materials.

## I.

As a threshold matter, the defendants argue that Perez's claims are barred under the Prison Litigation Reform Act of 1995 ("PLRA") for failure to exhaust administrative remedies.

Under the PLRA, an inmate may not pursue a claim in court unless the inmate has given prison authorities an opportunity to consider the grievance.  *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a).  The level of detail in an administrative grievance necessary to exhaust a claim is determined by the prison's grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).   "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

The California regulations require an inmate "to describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §  3084.2.  And under Department of Corrections regulations, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted [appeal] and addressed through all required levels of administrative review up to and including the third level." Cal. Code Regs. tit. 15, § 3084.1(b).  Accordingly, in California, a prisoner must describe the specific issue of which he complains in his grievance, and does not exhaust administrative remedies when he includes entirely new issues from one level of review to another.  *See Sapp v. Kimbrell*, 623 F.3d 813, 825 (9th Cir. 2010) (concluding that it was proper for prison officials to "decline[] to consider a complaint about [prisoner's] eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition"). Nevertheless, because California's regulations are "'incomplete as to the factual specificity [required in an inmate's grievance], a grievance [in California] suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Id.* at 824 (quoting *Griffin*, 557 F.3d at 1120) (first alteration in original).  In other words, a California prisoner's "grievance . . . need not contain

2

every fact necessary to prove each element of an eventual legal claim," *Griffin*, 557 F.3d at 1120, so long as it "puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824.

### A.

Perez's October 28, 2012 inmate appeal, PBSP-12-3402, was sufficient to exhaust his claims relating to the gang validation proceeding begun in October 2012 and the concomitant October 10, 2012 search of his cell. It's true, as the defendants argue, that Perez did not include certain specifics, such as the derogatory comments or the fact that the confiscated materials included litigation papers. But nothing in Cal. Code Regs. tit. 15, § 3084.2 suggests that "describ[ing] the specific issue under appeal" required Perez to disclose every factual basis for the alleged retaliation, or to recount every detail of the purportedly retaliatory conduct. And Perez did describe the subject of his appeal as "retaliation and conspiracy to violate federally protected rights in violation of [the] [First] Amendment [and] 42 U.S.C. § 198[3]." Benedetto Decl. Ex. 40. He further explained that he had filed a successful lawsuit based on past IGI procedures, that the defendants had "completely trash[ed]" his cell and taken his property, and that the defendants' actions, viewed in light of his First Amendment activity and the fact that he was not scheduled for or eligible for a new gang validation proceeding until 2014, "demonstrate[d] the[] [defendants'] unlawful intent to retaliate for [his] [First] Amendment exercise." *Id.* Perez also requested "an immediate cessation of . . . further retaliation and/or conspiracy to retaliate," as well as a return of his property and identification of the officials who ordered the search. *Id.* This level of detail was sufficient to "to notify the prison of [the] problem." *Griffin*, 557 F.3d at 1120. Indeed, the appeal form Perez received provides limited space to explain his grievance, and Perez was instructed not to exceed the space he was given, so he can hardly be blamed for not setting out every last detail.

### B.

Perez also exhausted his claims to the extent they stem from the RVR, which Defendant Gates issued in connection with the cell search. Although Perez did not expressly mention the RVR in his initial written complaint, that complaint generally informed the prison that Perez believed the officers who conducted the search intended to retaliate against him for the exercise of

3

1    his First Amendment rights and that Gates was one of the officers involved in the search.  Perez's

2    written complaint also requested an immediate cessation of all further retaliation against him.

3    PBSP-12-3402 thus encompassed the RVR as ongoing retaliation connected with the search.  And

4    unlike in *Sapp*, where a complaint about lack of treatment for one medical condition would not

5    necessarily put the prison on notice of the need to investigate whether the prisoner was receiving

6    adequate treatment for an unrelated medical condition, 623 F.3d at 825, here, Perez's grievance

7    gave the prison sufficient facts to investigate whether there was a retaliatory animus behind the

8    actions of the officers involved in the October 2012 cell search, including Gates, and including his

9    subsequent action in issuing the RVR.[1]

10   Even if PBSP-12-3402 were insufficient to exhaust Perez's claim with respect to the RVR,

11   exhaustion would be excused.  "The PLRA requires that an inmate exhaust only those

12   administrative remedies 'as are available.'"  *Sapp*, 623 F.3d at 822 (quoting 42 U.S.C. § 1997e(a)).

13   As a result, the Ninth Circuit has "recognized that the PLRA . . . does not require exhaustion when

14   circumstances render administrative remedies 'effectively unavailable.'"  *Id.* (quoting *Nunez v.*

15   *Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).  "[I]mproper screening of an inmate's

16   administrative grievances renders administrative remedies 'effectively unavailable' such that

17   exhaustion is not required under the PLRA."  *Id.* at 823.  When Perez thought that the third level

18   reviewer had determined that his RVR claim was a "new issue[]" that could not be addressed in

19   his original appeal, he tried to raise it in a new appeal, PBSP-13-0647.  Benedetto Decl. Ex. 42.

20   But the prison cancelled that appeal as a duplicate of the prior one.  The defendants acknowledge

21   that this was "improper."  Reply Br. at 5.

## C.

23   The defendants also argue Perez failed to exhaust his claims to the extent they rest in part

---

[1] And prison officials were indeed able to investigate whether the RVR was retaliatory.  Perez informed the sergeant who investigated his grievance that Gates had issued the RVR in connection with the cell search, and identified the RVR as evidence supporting his claims of retaliation and conspiracy.  The defendants can hardly complain, then, that Perez did not "present [his] complaint at the first level of the administrative process."  *Sapp*, 623 F.3d at 825.  He did.  Additionally, the investigator and the second-level reviewer both expressly considered the RVR in their review of PBSP-12-3402, concluding it was not "indicat[ive] of retaliation."  Benedetto Decl. Ex. 42; *see also id.* Ex. 41.

4

on allegations that the defendants were also retaliating against him for engaging in hunger strikes and publishing articles critical of the Department of Corrections. The defendants are correct that Perez identified only his prior litigation as the source of the defendants' retaliatory motive in his grievance, and never informed the prison that he believed the defendants were also punishing him for having engaged in other protected conduct. Because Perez never presented the prison with the theory that the defendants were also retaliating against him for other First Amendment activity, his claims are unexhausted to the extent they rely on these allegations, because the prison was not given an opportunity to investigate these possible sources of retaliatory motive. Although Perez's history of First Amendment activity could still be relevant at trial (an issue that may need to be decided by way of motion in limine), his actual First Amendment claims must be limited to the theory that Perez exhausted in his grievance, namely, that the defendants retaliated against him because of his prior lawsuit.

## II.

To succeed in a First Amendment retaliation claim, a prisoner must prove that officials took some adverse action against him because of his protected speech, that the action chilled (or could reasonably be expected to chill) future speech, and that the action did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Summary judgment is only appropriate if, viewing the evidence in the light most favorable to Perez, no reasonable juror could find that he satisfies this test. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

### A.

No reasonable juror could conclude that the defendants had a retaliatory motive when they initiated and continued processing a new gang validation proceeding, and therefore all defendants are entitled to summary judgment on that issue. All of the evidence indicates that prison higher-ups (that is, not the defendants here) ordered the new gang validation proceeding because they thought it was required by a court order relating to the settlement of Perez's prior lawsuit. It turns out the higher-ups were wrong about that, but there is no evidence to suggest that these defendants

were doing anything other than following their superiors' mistaken orders.  This is so even viewing the evidence in the light most favorable to Perez.  *Brodheim*, 584 F.3d at 1267.

**B.**

However, a reasonable juror could conclude that the defendants (except, in part, for Burris, as discussed below) retaliated against Perez based on his prior lawsuit when they allegedly trashed his cell, when they allegedly confiscated his writings about prison conditions and his litigation materials, and when Gates issued the allegedly false RVR.

There can be no serious question that this conduct is "adverse action" within the meaning of a First Amendment retaliation claim, nor is there a serious question that it would chill "a person of ordinary firmness from future First Amendment activities."  *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69) (emphasis omitted).  At the hearing on this motion, the only articulable argument the defendants made on this issue was that trashing an inmate's cell is not nearly as big a deal as trashing someone's mansion.  But Perez has testified that his possessions were left in disarray, covered in dirty boot prints, spilled out and otherwise damaged.  He has also testified that the defendants destroyed or confiscated important papers.  If true, that is a real harm and would effect a real chill on an ordinary person's exercise of his First Amendment rights.  And that is no less true of someone who is a prisoner or who lives in something other than a mansion.

There is also evidence from which a reasonable juror could conclude that the defendants were retaliating against Perez for his prior lawsuit when they trashed his cell, took his papers, and issued a false RVR against him.  Perez has testified that the defendants "trashed [his] cell while saying discouraging and disparaging remarks" both to him and his cellmate about filing lawsuits.  Perez Decl. ¶ 84.  Perez further states that, during the search, Defendant Healy asked Perez's cellmate, Guerrero, whether he was "into filling lawsuits too," and when Guerrero said that he was not, Healy responded "Good for you.  Keep it that way."  Perez Decl. ¶ 42.  During the search, an inmate in the neighboring cell allegedly overheard one of the defendants say, "these knuckleheads should file suits more often—makes our job a whole lot more rewarding."  Perez Decl. ¶ 48.  And Defendant Gates allegedly told Perez: "you might've been able to collect from us, but get comfortable because we're going to make sure you stay here where you belong."  Perez Decl. ¶ 44.

6

Perez also states that the officers left his cell "in complete disarray," and that his "clothing, sheets, and blankets were unfurled and marked with dirty boot prints; and . . . shampoo, toothpaste, and other liquid toiletries, which had been contained in transparent plastic bags, were emptied out and spilled in the lockers." Perez Decl. ¶ 45. In addition, as a part of the search, Perez asserts that the officers removed, among other items of his property, some "folders containing drafts of [his] Ninth Circuit brief." Perez Decl. ¶ 44. And although most of Perez's property was eventually returned, Perez states that the drafts of his Ninth Circuit brief were neither returned to him nor identified in the cell search receipts he was given. A reasonable juror could find from this evidence that the defendants acted with retaliatory motive during the cell search. And even though not all of the defendants involved in the search of Perez's cell made derogatory comments, it would be reasonable to impute the same retaliatory motivation to them, given that they acted in concert when they conducted the search.

Perez also presented sufficient evidence that Gates' issuance of the RVR was retaliatory. The RVR charged Perez with "willfully resisting or obstructing a peace officer," a serious offense that would have precluded Perez from leaving the SHU, as he desired. Perez Decl. ¶ 57. Gates alleged in the RVR that Perez had obstructed correctional officers' view into the cell to conceal that his cell-mate was destroying gang paraphernalia when they arrived to conduct the search. But according to Perez, not only did he not obstruct the officers' view, it would have been physically impossible for him to do so, given the layout of the cell. Perez notes that prison officials eventually found there was insufficient evidence to support the RVR. And as previously mentioned, Perez has testified that Gates told him the defendants were "going to make sure you stay here where you belong." Perez Decl. ¶ 44. Because a reasonable juror could conclude from this evidence that Gates fabricated the RVR, and did so for the same unlawful retaliatory motive that animated the officers' conduct during the search itself, there is a genuine dispute of material fact as to the motive behind the RVR as well.

Finally, a reasonable juror could conclude "that the challenged action 'did not reasonably advance a legitimate correctional goal.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568). Whether the defendants' conduct advanced a legitimate correctional goal depends on what

7

actually happened. If the events occurred according to the evidence Perez has submitted, a jury could reasonably find in Perez's favor on this issue, because the retaliatory conduct does not advance any legitimate penological interest.

This precludes entry of summary judgment for all defendants except Burris with respect to the cell-trashing, the confiscation and destruction of property, and the RVR. As for Burris, he was not present during the search of Perez's cell, so the cell-trashing and the issuance of the RVR cannot reasonably be attributed to him. Nevertheless, a reasonable juror could find that Burris retaliated against Perez by confiscating Perez's legal materials and articles critical of the Department of Corrections. Burris admits that the other defendants brought him property that had been removed from Perez's cell, and that he confiscated some of this material as contraband and kept other material for review and investigation as part of the gang validation proceeding. Burris and Pimentel completed the second of the cell-search receipts, which Perez claims did not include the legal materials and articles he says were seized but never returned to him. Burris also was aware of Perez's ongoing litigation against the Department of Corrections at the time. A reasonable juror could therefore find that Burris confiscated Perez's legal materials and articles with a retaliatory motive and for no legitimate penological purpose. For that reason, while Burris is entitled to summary judgment with regard to the cell-trashing and the issuance of the RVR, he is not with regard to the confiscation of Perez's legal materials and articles.

## III.

The defendants argue that even if there were a genuine fact issue on the First Amendment retaliation claims discussed in Section II.B., they are entitled to summary judgment on Perez's claim that they *conspired* to retaliate against him.

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  However, "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available.  Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302 (9th Cir. 1999).  Therefore, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* at 1301.

Viewed in the light most favorable to Perez, the fact that several of the defendants acted together in allegedly trashing Perez's cell and confiscating his property is sufficient to infer a conspiracy.  And a reasonable juror could conclude that Gates' issuance of the RVR was an action in furtherance of the conspiracy to retaliate against Perez.  Summary judgment is therefore not appropriate on Perez's conspiracy claim, either, to the extent it relates to the search, the confiscation, and the RVR.  But as with Perez's First Amendment retaliation claim, because all of the evidence indicates that the decision to conduct the gang validation proceeding was a mistake, the defendants are entitled to summary judgment on Perez's conspiracy claim to the extent it rests on that decision.  And Burris is entitled to summary judgment as to his involvement in the alleged conspiracy to trash Perez's cell and issue the RVR, for the same reasons he is entitled to summary judgment on Perez's First Amendment retaliation claims in that regard.

**IV.**

The defendants claim they are entitled to qualified immunity from suit for their search of Perez's cell, their confiscation of his property, and their issuance of a false RVR.  But "[t]his is the type of qualified immunity case where a factual dispute that precludes entry of summary judgment on the underlying constitutional question also precludes a finding of qualified immunity at the summary judgment stage." *Smith v. Mack*, 2015 WL 3830662 at *4 (N.D. Cal. 2015) (citing *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 532 (9th Cir. 2010)).  "In other words, if there was a violation at all, it was by definition a clear violation." *Id.*  Indeed, counsel for the defendants acknowledged at the hearing on this motion that if Perez's version of events

9

were accepted, there could be no qualified immunity – it would have been clear to any reasonable prison official in 2012 that trashing a prisoner's cell, confiscating his materials, and issuing a false rules violation report against him (all in retaliation for having filed a lawsuit against the Department of Corrections) violates the First Amendment.

## V.

In light of the foregoing, the motion for summary judgment is granted, for failure to exhaust, with respect to Perez's claims that the defendants retaliated because of his involvement in hunger strikes and his writings that were critical of the Department of Corrections' incarceration practices. The motion is also granted with respect to Perez's claim that the defendants retaliated by initiating and pursuing the gang validation proceeding. With respect to Defendant Burris, the motion is also granted as to Perez's retaliation and conspiracy claims relating to the cell-trashing and the RVR report, but not as to the confiscation of materials. With respect to the other defendants, the motion is denied with respect to Perez's retaliation and conspiracy claims relating to the cell-trashing, the confiscation of materials, and the RVR report.

**IT IS SO ORDERED.**

Dated: September 22, 2015

_____
VINCE CHHABRIA
United States District Judge