KAMALA D. HARRIS
Attorney General of California
DAMON G. MCCLAIN
Supervising Deputy Attorney General
JENNIFER J. NYGAARD
Deputy Attorney General
State Bar No. 229494
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA  94612-0550
  Telephone:  (510) 622-4460
  Fax:  (510) 622-2270
  E-mail:  Jennifer.Nygaard@doj.ca.gov
*Attorneys for Defendants Burris, Gates, Gongora, Healy, and Pimentel*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JESSE PEREZ,**<br><br>                Plaintiff,<br><br>v.<br><br>**J. PRELIP, et al,**<br><br>                Defendants. | C 13-5359 VC (PR)<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Courtroom:  4<br>Judge:        The Honorable Vince Chhabria<br>Trial Date:  November 16, 2015<br>Action Filed:  November 19, 2013 |

## INTRODUCTION

Perez alleges that Defendants Burris, Gates, Gongora, Healy, and Pimentel (Defendants) retaliated against him for a 2005 lawsuit that he had filed against officers at a different prison by trashing his cell, confiscating a legal brief and articles that he had written that were critical of the California Department of Corrections and Rehabilitation ("CDCR") during the search, and issuing a baseless Rules Violation Report ("RVR") for his conduct during the search.

The evidence at trial will demonstrate that Gates, Gongora, Healy, and Pimentel conducted the cell search based on instructions from their supervisor to conduct a gang validation in connection with Perez's previous lawsuit, and that they followed procedure and did not "trash"

1

his cell. The evidence at trial will also demonstrate that Burris followed policy when he confiscated Perez's paperwork, and that Gates followed procedure when he issued the RVR. There is no evidence that Defendants retaliated against Perez, or conspired to retaliate against him for having filed the 2005 lawsuit. The evidence will not substantiate Perez's claims. Therefore, Defendants are entitled to a judgment in their favor and qualified immunity.

## FACTUAL BACKGROUND

Perez is an inmate housed at Pelican Bay State Prison ("Pelican Bay"). In 2003, while housed at another prison, Perez was validated as an associate of the Mexican Mafia prison gang, and transferred to the Security Housing Unit ("SHU") at Pelican Bay. In October 2012, Defendants Burris, Gates, Gongora, Healy, and Pimentel were correctional officers at Pelican Bay, working as Assistant Institutional Gang Investigators.

On October 10, 2012, Defendants' supervisor Lieutenant Barneburg, sent an email to four of his subordinates, including Burris and Pimentel, instructing them to review Perez for a new gang validation as soon as possible. Barneburg had been instructed by the Office of Correctional Safety to conduct a new validation for Perez as soon as possible in connection with a previous lawsuit Perez had filed. (*Id.*)

Searching an inmate's cell for evidence of gang activity, and confiscating property, including paperwork, to review more thoroughly for indications of gang activity, is a regular part of the gang-validation process. Accordingly, Perez's cell was searched by Gates, Gongora, Healy, and Pimentel on October 10, 2012. Gates, Gongora, Healy, and Pimentel did not know who Perez was when they went to search his cell. They had no recollection of reading any of Perez's mail, were not aware of any articles he authored, and did not know he had participated in hunger strikes. Perez also acknowledges that he did not know Gates, Gongora, and Healy before the search, and that his only interaction with Pimentel was during one previous cell search.

Paperwork and other property were removed from Perez's cell during the search for further review and used during his gang-validation proceedings. The property was delivered to Burris after the search, and Gates, Gongora, and Healy did not review it further. Perez's property was returned to him the next day, except for contraband or items retained for further review and

2

Defs.' Trial Brief (C 13-5359 VC (PR))

investigation as part of the gang-validation proceedings. Perez claims that some articles he had written that were critical of CDCR and a legal brief were not returned.

Perez alleges that during the search of his cell, inmate Mendoza, who was in the adjacent cell, overheard one of the Defendants say "these knuckleheads should file suits more often—makes our job a whole lot more rewarding." Defendants deny making any such statement. Perez also claims that Healy asked his cellmate Guerrero whether he was "into filing lawsuits too," and that when Guerrero responded "no," Healy said "Good for you. Keep it that way." Defendants deny that Healy made these statements. Perez also claims that Gates said "you might've been able to collect from us, but get comfortable because we're going to make sure you stay here where you belong." Defendants deny that Gates made such a statement.

As Defendants approached Perez's cell on October 10, 2012, Gongora heard Perez instruct his cellmate Guerrero, in Spanish, to "hurry up." Some of the Defendants could see Guerrero at the toilet tearing up pieces of paper and putting the paper into the toilet. Gates believed that Perez was trying to block Defendants' view of Guerrero because every time Gates would move to get a more straight-on view of Guerrero, Perez would move to block his view of Guerrero and the toilet. Gates ordered Perez to stop doing that and to cuff up, but he did not comply with the orders for a few minutes.

On or about October 22, 2012, Perez received a RVR, written by Gates, charging him with "Willfully Obstructing a Peace Officer." Gates did not discuss the RVR with any of the other Defendants before he issued it. At a disciplinary hearing, Perez was found "Not Guilty" and the RVR was dismissed. The Senior Hearing Officer's ("SHO") findings were based on the evidence that, although Perez may have wanted or attempted to mask the actions of his cellmate, he was not successful in doing so because the officers were still able to see his cellmate destroying "kites" and placing them into the toilet. Even though the SHO found Perez "not guilty," he did not see any indication of misconduct by Gates in issuing the RVR. If he had felt that Gates had done anything wrong, he would have reported it to a superior, which he did not do. The evidence disclosed at the disciplinary hearing was simply not sufficient to support the charge, which, in the SHO's experience, is not uncommon.

3

Defs.' Trial Brief (C 13-5359 VC (PR))

# LEGAL DISCUSSION

## I. THE EVIDENCE WILL NOT SHOW THAT DEFENDANTS RETALIATED AGAINST PEREZ

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The alleged retaliatory action need not, in itself, constitute a constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated). However, not every allegedly adverse action will support a retaliation claim. *See e.g. Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The evidence at trial will show that Defendants conducted the cell search based on instructions from their supervisor, and that the RVR was issued in accordance with policy. Perez will not be able to establish that Defendants took an adverse action because of his protected conduct, or that Defendants' actions would have chilled an inmate of ordinary firmness from exercising his First Amendment rights, or that Defendants' actions did not reasonably advance a

4

Defs.' Trial Brief (C 13-5359 VC (PR))

legitimate correctional goal. Thus, Perez will not be able to establish that Defendants retaliated against him.

## II. THERE IS NO EVIDENCE OF A CONSPIRACY

A conspiracy claim requires proof of an agreement or meeting of the minds to violate constitutional rights, *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quotation omitted), as well as an actual deprivation of constitutional rights resulting from the alleged conspiracy, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quotation omitted). To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Franklin*, 312 F.3d at 441 (quotation omitted).

The evidence at trial will not demonstrate that that Defendants had "an agreement or meeting of the minds" to violate Perez's constitutional rights. Defendants simply communicated about searching Perez's cell as part of a gang-validation proceeding. And none of the Defendants spoke to Gates about issuing the RVR.

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the rule is to permit officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights. *Id*. at 819.

In *Saucier*, the Supreme Court set forth a two-part inquiry to determine whether the immunity exits. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show that the officer's conduct violated a constitutional right." *Id*. If a violation can be made out, the second prong, is to ask whether the "right was clearly established." *Id*. If the right was clearly established at the time of the alleged incident, the court must then determine whether, "under that law, could a reasonable state official have believed his conduct was lawful." *Id*. at 202. Qualified immunity allows ample room for mistaken judgments—regardless of whether the

5

government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact"—and applies even when wrongful conduct occurs. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The court has the discretion, based on the circumstances of the particular case at hand, to decide whether the two-part inquiry is worthwhile or if a determination can be made by analyzing a single prong of the immunity inquiry. *Pearson*, 555 U.S. at 236.

The facts at trial will demonstrate that Defendants are entitled to qualified immunity because Perez cannot satisfy either part of the *Saucier* test, and Defendants acted reasonably.

### IV. PEREZ IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF.

Perez should not receive any declaratory or injunctive relief because those forms of relief are not permissible under the Prison Litigation Reform Act ("PLRA"). The PLRA provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

This case is only about one cell search, and one RVR. Yet Perez seeks prospective relief in the form of a permanent injunction prohibiting Defendants, their agents, and successors from engaging in future retaliation. The requested injunction, is not based on any alleged ongoing violation by Defendants, and thus, would not be narrowly drawn or the least intrusive means to correct an actual violation of Perez's Federal rights.

Perez also requests a declaration that Defendants violated Perez's First Amendment rights. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). A declaratory judgment should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333

6

Defs.' Trial Brief (C 13-5359 VC (PR))

U.S. 426, 431 (1948). If a jury returns a verdict in favor of Perez, that verdict will be a finding that Perez's constitutional rights were violated. *Villery v. Cal. Dep't of Corr. & Rehab.*, No. 1:15-cv-00987-GSA-PC2015, U.S. Dist. LEXIS 88830, * 23 (E.D. Cal. July 8, 2015). Thus, a declaration that Defendants violated Perez's rights is unnecessary.

## V.  THE TRIAL SHOULD BE BIFURCATED

Defendants request that the trial be bifurcated into liability and punitive damages phases, with compensatory damages assessed during the liability phase. Bifurcation is at the discretion of the district court and may be used "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court should consider such factors as the "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." *Cravens v. County of Wood, Ohio*, 856 F.2d 753, 755 (6th Cir. 1988). Defendants bear the burden of proving financial worth when arguing in mitigation of damages. *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991). Punitive damages involve intrusive questions, which are intensified in the prison context. Perez's access to Defendants' personal and confidential information could lead to safety and security concerns.

## CONCLUSION

The evidence at trial will not prove that Defendants retaliated and conspired to retaliate against him because he had filed a previous lawsuit. Rather, the evidence will show that Defendants did not take an adverse action because of Perez's previous lawsuit, that an inmate of ordinary firmness would not have had his First Amendment rights chilled by Defendants' conduct, and that there was a legitimate correctional goal for all of Defendants' conduct. The evidence will also show that Defendants are entitled to qualified immunity. Moreover, Perez's request for injunctive and declaratory relief should be denied.

Dated: October 16, 2015

Respectfully submitted,
KAMALA D. HARRIS
Attorney General of California
**/S/ Jennifer J. Nygaard**
JENNIFER J. NYGAARD
Deputy Attorney General
*Attorneys for Defendants*

7

Defs.' Trial Brief (C 13-5359 VC (PR))