```
                                           Volume 5

                                           Pages 758 - 777

                 UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE VINCE CHHABRIA

JESSE PEREZ,                      )
                                  )
            Plaintiff,            )
                                  )
  VS.                             ) No. C 13-5359 VC
                                  )
A. GATES, et al,                  )
                                  )  San Francisco, California
            Defendants.          )  Monday
                                  )  November 23, 2015
_____ )  8:00 a.m.
```

### TRANSCRIPT OF JURY TRIAL PROCEEDINGS

**APPEARANCES:**

| | |
|---|---|
| **For Plaintiff:** | WILMER CUTLER PICKERING HALE DORR, LLP |
| | 350 South Grand Avenue |
| | Suite 2100 |
| | Los Angeles, California 90071 |
| **BY:** | **RANDALL ROSS LEE, ESQ.** |
| | **MATTHEW DONALD BENEDETTO, ESQ.** |
| | **KATHLEEN BRIDGET MORAN, ESQ.** |

| | |
|---|---|
| **For Defendant:** | STATE OF CALIFORNIA |
| | Office of the Attorney General |
| | 455 Golden Gate Avenue |
| | Suite 11000 |
| | San Francisco, California 94102 |
| **BY:** | **JENNIFER J. NYGAARD, ESQ.** |
| | **ELLIOTT THOMAS SEALS, ESQ.** |

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
  *Official Reporter - US District Court*
  *Computerized Transcription By Eclipse*

PROCEEDINGS

```
 1                    'P R O C E E D I N G S
 2   NOVEMBER 23, 2015                              10:42 A.M.
 3        (Proceedings held in open court, outside
 4         the presence and hearing of the jury.)
 5             THE CLERK:  Calling Case 13-CV-5359, Jesse Perez
 6   versus A. Gates, et al.
 7        Counsel, please state your appearances for the record.
 8             MR. LEE:  Good morning, your Honor.  Randall Lee,
 9   Matthew Benedetto and Katie Moran for Mr. Perez, who is
10   present.
11             THE COURT:  Good morning.
12             MS. NYGAARD:  Good morning.  Jeffrey Nygaard from the
13   California Attorney General's Office.  Also with Elliott Seals
14   and the five defendants, who are present.
15             THE COURT:  Good morning, everyone.
16             MS. NYGAARD:  Good morning.
17             THE COURT:  So I think you had already received,
18   before I came in, the two questions that they posed.  This is
19   my proposed response.  Why don't you take as much time as you
20   need to review it?
21        (Brief pause.)
22             THE COURT:  Are you ready?
23             MR. LEE:  Yes.
24             MR. SEALS:  Yes.
25             THE COURT:  Any thoughts?
```

PROCEEDINGS

```
 1            MR. SEALS:  Yes, your Honor.

 2            MR. LEE:  Just one thought, your Honor.  In the

 3   sentence that says:

 4            "In a trial there are many possible reasons why a

 5        jury does not receive certain evidence and you should

 6        not speculate about that."

 7        I guess the one concern we have is that -- that one might

 8   infer from that that there exists certain evidence that they

 9   haven't received.  And so maybe one easy fix would be to say:

10            "...why a jury does not receive certain evidence,

11        if it exists, and you should not speculate about

12        that."

13        Because, clearly, you know, we want to try to, you know,

14   address or mitigate any concern that there is evidence out

15   there about Mr. Perez's other activities.

16            THE COURT:  If we give them that sentence, I think we

17   would have to make a change along the lines of what you

18   suggest.

19        Any other -- any other thoughts about the response?

20            MR. LEE:  No.  Otherwise, it sounds appropriate.

21            THE COURT:  Okay.

22            MR. SEALS:  The defendants are concerned with respect

23   to question No. 1 from the jury.

24            THE COURT:  Okay.

25            MR. SEALS:  Sorry, question No. 2.
```

PROCEEDINGS

1              THE COURT:  Okay.

2              MR. SEALS:  We believe that this question indicates

3   that the jury is confused because of what plaintiff put at

4   issue in this case, such as Mr. Perez's character and his past

5   behavior.  And there was a motion in limine barring us from

6   eliciting testimony regarding Mr. Perez's gang activity and we

7   did our best to comply with that.

8         So, you know, I think that --

9              THE COURT:  What evidence was put in about

10  Mr. Perez's character?

11             MR. SEALS:  Well, in their opening statement and when

12  Mr. Perez was on the stand, he discussed his childhood and the

13  fact that he took care of his --

14             THE COURT:  I don't believe that Mr. Perez discussed

15  his -- I know that Mr. Lee made a reference to an abusive

16  childhood during opening statements and that I don't think was

17  proper, but I don't believe Mr. Perez reiterated that during

18  his testimony.

19        I think Mr. Perez stated that he made some bad choices and

20  I gather that's not a controversial statement, that he made

21  some bad choices.

22        So, but am I missing something?  Am I forgetting something

23  about Mr. Perez's testimony?

24             MR. SEALS:  I believe he also testified about his

25  relationship with his brothers and his family situation before

PROCEEDINGS

 1  being placed in prison.

 2           THE COURT:  But that's not -- is that character

 3  evidence?  I mean, that's evidence relevant to the effect that

 4  a threat to be put -- to be kept in the SHU had on him, right?

 5           MR. SEALS:  "Character evidence" may be the incorrect

 6  term.  It may be too really specific of a term.

 7           THE COURT:  So what evidence do you believe -- let me

 8  respond this way.

 9      I actually think that what is likely driving the jury's

10  question here is your -- your improper statement during

11  opening; that Mr. Perez was a gang member and that his

12  witnesses were gang members.  And I -- and then, as I recall

13  correctly, during cross-examination of Mr. Perez, Ms. Nygaard

14  attempted to go down that road, again in violation of my

15  in limine ruling.

16      And so I think what may be happening here with the jury is

17  that it has been -- it has become tempted to speculate about

18  the answer to that question because of the fact that you raised

19  it in your opening statement and sort of promised some evidence

20  about it, and then Ms. Nygaard tried to ask about it during

21  cross and was shut down in light of the limine ruling.

22      And I think that's the prejudice that we need to be

23  concerned with, not any concern that the jury may have been

24  given the misimpression by the plaintiffs that Mr. Perez is a

25  saint or something like that.

PROCEEDINGS

1          **MR. LEE:**  Your Honor, I would also add there was all

2    kinds of prejudicial testimony from Lieutenant Barneburg and at

3    least one of the defendants, if not more, about the nature

4    of -- you know, the reason for cell searches and the kinds of

5    activities that they find evidence of during cell searches and

6    so on, which was clearly designed to sort of poison the well

7    and none of which was specific to Mr. Perez.

8          **THE COURT:**  I'm not sure I agree with that.  But so

9    what -- okay.  So, but you were starting to say that the

10   defense is concerned with the second question.

11        The question is:  Is there anything wrong with the

12   proposed response?  And if so, what do you propose instead?

13        **MR. SEALS:**  I guess defendants would propose that the

14   Court respond to this question by stating that, yes, defendants

15   were prohibited from eliciting testimony that supported Perez's

16   gang activity.

17        **THE COURT:**  Because of the fact that you tried to get

18   that in anyway, but weren't allowed to, which is probably why

19   the jury is asking about it?

20        **MR. SEALS:**  I would disagree with the

21   characterization of the opening statement and the witness's

22   testimony.  I believe I -- I stated I did use the term "member"

23   as opposed to "associate," which there is no dispute that there

24   is a difference within the prison complex between members and

25   associates of prison gangs.

PROCEEDINGS

```
 1        I don't recall there being testimony during trial

 2   regarding the difference between associates and members of

 3   prison gangs.  So I don't think that had any prejudicial

 4   effect.

 5        And as we discussed previously --

 6        THE COURT:  I'm sorry.  So are you saying that you

 7   think it was okay -- you think that the motion in limine ruling

 8   stood for the proposition that you were allowed to put on

 9   evidence that he was a gang associate, but not allowed to put

10   on evidence that he was a gang member?

11        MR. SEALS:  I believe the motion in limine -- I agree

12   that it wasn't entirely clear.  However, based on the statement

13   of the case, which --

14        THE COURT:  You agree that what wasn't entirely

15   clear?

16        MR. SEALS:  The motion in limine --

17        THE COURT:  You think the ruling on the motion in

18   limine can be reasonably interpreted as allowing you to elicit

19   testimony that he was a gang associate, just not a gang member?

20        MR. SEALS:  Testimony that he was an associate of the

21   Mexican Mafia prison gang, not of any street gang activity.

22   Because that's what the motion in limine was regarding.

23        And in the statement of the case agreed upon by

24   plaintiff's attorneys, we mentioned that he was an associate of

25   the Mexican Mafia -- not that he was an associate, but that he
```

PROCEEDINGS

 1   had been validated as an associate.

 2       **THE COURT:**  Okay.  So if we were to respond to the

 3   question by saying:  Yes, the defendants were prevented from

 4   eliciting testimony about Mr. Perez's gang involvement; there

 5   any difference between that and just saying:  I would like to

 6   inform the jury that Mr. Perez did have gang involvement.

 7       **MR. SEALS:**  No, because it's an open question -- I

 8   think Mr. Perez would dispute that he was an associate of the

 9   Mexican Mafia.

10       **THE COURT:**  Right.  But by saying that the defendants

11   were prevented from eliciting testimony about his gang

12   involvement, wouldn't we be effectively telling the jury that

13   he did, in fact, have gang involvement?

14       **MR. SEALS:**  I believe we would be informing the jury

15   that his gang involvement was not at issue in this case.  This

16   was not a case about Mr. Perez's gang involvement.

17       **THE COURT:**  Why don't we tell them that?  This is not

18   a case about Mr. Perez's Gongora involvement.

19       And if you propose to tell the jury this is not a case

20   about Mr. Perez's gang involvement, why were you trying to get

21   before the jury evidence of his gang involvement?

22       **MR. SEALS:**  I don't -- so his -- his validation as a

23   Mexican Mafia member was relevant because that's the reason he

24   was in the Security Housing Unit.

25       However, whether or not that validation was correct,

PROCEEDINGS

```
 1  whether he was an actual associate of a gang member, of a

 2  gang --

 3           THE COURT:  Is not relevant?

 4           MR. SEALS:  I believe so.

 5           THE COURT:  Okay.  So then --

 6           MR. SEALS:  And then --

 7           THE COURT:  -- would you --

 8           MR. SEALS:  I'm sorry.

 9           THE COURT:  Are you proposing that we tell the jury

10  this case is not about whether Mr. Perez had gang involvement?

11           MR. SEALS:  This case is not -- may I take a moment

12  to consult with my co-counsel?  I apologize, your Honor.

13           THE COURT:  Sure.

14     Because I'm not going to tell them -- I'm not going to

15  answer the question in the way you initially proposed.

16           MR. SEALS:  Understood, your Honor.

17           THE COURT:  Because it seems contrary to the concept

18  that this is not about Perez's gang involvement.

19     (Discussion held off the record between defense

20      counsel.)

21           MR. SEALS:  Okay, your Honor.

22     I believe defendants would likely be willing to -- well,

23  let me just start with, the defendants disagree that

24  Mr. Perez's gang involvement is entirely irrelevant because one

25  of the issues brought up by plaintiff during trial was
```

PROCEEDINGS

1  Mr. Perez's state of mind when the defendants searched his cell

2  that day, and they elicited testimony that Mr. Perez was not

3  due for an active/inactive review on the date that the

4  defendants came to search hits cell.

5      So there is some relevance regarding his gang validation

6  and the procedure for the gang validation.

7          THE COURT:  And I agree to a certain extent with

8  that, and I think that, you know, evidence of his gang

9  involvement is -- has some degree of relevance for another

10  reason as well, which is that, you know, it -- it may be

11  relevant to who's telling the truth about the RVR and what the

12  cellmates were doing when -- when the officers arrived.

13      But I ruled that under 403 the -- you know, the evidence

14  of his gang involvement is to be excluded.

15          MR. SEALS:  Right.

16          THE COURT:  So notwithstanding its sort of -- that it

17  has some degree of relevance.  So I agree with you to that

18  extent.

19      So what are you proposing?

20          MR. SEALS:  We would propose just responding with

21  your proposed response with Mr. Lee's slight change.

22          THE COURT:  Okay.  And you agree with Mr. Lee's

23  slight change?

24          MR. SEALS:  That's fine with the defendants.

25          THE COURT:  Okay.  So I will send that note back --

PROCEEDINGS

1    I'll make that change.  Send that note.

2        And you proposed -- let me make sure.  I think I have it,

3    but let me make sure:

4            "In a trial there are many possible reasons why a

5            jury does not receive certain evidence (if it

6            exists)."

7            MR. SEALS:  I'm sorry, your Honor.  I just had one

8    more thought that I would like to take a second to discuss.

9            THE COURT:  Sure.  No problem.

10           "...and you should not speculate about that."

11           MS. NYGAARD:  Correct.  Yes.

12       (Discussion held off the record between defense

13        counsel.)

14           MR. SEALS:  I apologize, your Honor.

15           THE COURT:  No.  No problem.

16           MR. SEALS:  Defendants would object to Mr. Lee's

17   change in the response.  Our concern with the term "if it

18   exists," I believe that may prejudice the jury into thinking

19   that the dismissed RVR may have existed in CDCR's possession

20   because they -- they made the statements during trial or they

21   questioned witnesses during trial to -- it seemed like to show

22   the jury that the only reason this RVR was still -- was

23   available for them to review was because Mr. Perez retained it,

24   although it was standard procedure for the prison to destroy

25   dismissed RVRs, and the "if it exists" term may confuse that.

PROCEEDINGS

```
 1            THE COURT:  What if -- what if we just deleted that

 2    second sentence?

 3            MR. LEE:   I think we would be fine with that, your

 4    Honor.

 5        (Brief pause.)

 6            MR. SEALS:  Defendants have one proposal.

 7            THE COURT:  Okay.

 8            MR. SEALS:  Maybe in the second sentence instead of

 9    the "if it exists term," it could say:

10            "In a trial there are many possible reasons why a

11        jury does or does not receive certain evidence and

12        you should not speculate about that."

13            THE COURT:  That still sort of presumes that it

14    exists.

15            MR. SEALS:  I think it's not as presumptive, I guess,

16    is the defense --

17            THE COURT:  I think it's equally presumptive.

18        So what would you prefer?  Would you prefer the second

19    sentence in there with the parenthetical "if it exists" or

20    would you prefer just removing the second sentence all

21    together?  It seems to me that either would be appropriate.

22            MR. SEALS:  Defendants would prefer to get rid of the

23    second sentence.

24            THE COURT:  Okay.  So what I will -- I'll send them a

25    note which says:
```

PROCEEDINGS

```
 1              "In your deliberations you must limit yourself to

 2         consideration of the evidence that was presented to

 3         you during trial.  In addition, I remind you that

 4         questions by attorneys were not evidence and if I

 5         sustained an objection to a question, you should

 6         disregard that question all together and it should

 7         not be part of your deliberations."

 8         Okay.

 9              MR. LEE:  That's fine.

10              THE COURT:  Okay.  I'll go ahead and -- you're free

11    to go, but not far.  And I'll -- I'll return that note to

12    the -- that response to them and we'll put it in the record.

13              MR. LEE:  Great.  Thank you.

14              THE COURT:  Thank you.

15              THE CLERK:  Court is in recess.

16         (Whereupon proceedings were adjourned for

17          deliberations from 11:01 a.m. until 2:46 p.m.)

18              THE COURT:  Hello again.

19         So you've already seen the question.  My proposed response

20    is:

21              "Thank you for catching that.  Question two of

22         the verdict form should say 'two or more defendants.'

23         I'm sending in a corrected verdict form."

24         Any objection?

25              MR. LEE:  No objection.
```

1          **MS. NYGAARD:**  No objection.

2          **THE COURT:**  Okay.  We'll do that then.  Kristen has

3   given you the revised verdict form which merely changes it to

4   "two or more defendants."

5          Thank you.

6          **MR. LEE:**  Okay.  Thank you.

7          **MS. NYGAARD:**  Thank you.

8          **THE CLERK:**  Court is in recess.

9          (Whereupon proceedings were adjourned for

10          deliberations from 2:45 p.m. until 3:58 p.m.)

11          **THE COURT:**  Just reading the note again.

12          Looks like they are saying:

13          "We're having extreme difficulty coming to a

14          unanimouse [sic] decision on two of the defendants."

15          Anyway...  So I have a couple different proposals, but I'm

16   also happy to hear from you about other alternatives.

17          One proposal would be to just tell them something along

18   the lines of -- and I haven't written it out yet, but something

19   along the lines of:

20          "It's not uncommon for a conscientious jury to

21          need more than one day to reach a decision.  I

22          instruct you to go home and resume your deliberations

23          tomorrow."

24          That would be one thing.

25          The other, the other approach would be to say something

PROCEEDINGS

 1  along those lines and go ahead and give them the Allen

 2  instruction now.

 3       And I would personally be comfortable with either one of

 4  those things.  I know there is a lot of concern about, you

 5  know, the *Allen* charge being coercive and whatnot, but this

 6  jury has thus far in the notes that it has sent out and in the

 7  fact that it has made clear that it only cannot reach a

 8  unanimous verdict or is having trouble reaching a unanimous

 9  verdict as to two of the defendants, it shows to me that the

10  jury is being very conscientious and responsible and is -- you

11  know, there seems -- doesn't seem like there's much of a risk

12  that somebody is going to feel steamrolled by this -- what I

13  consider to be a pretty benign *Allen* charge, instruction No.

14  3.5.

15       So I think I would be comfortable with either of those two

16  approaches and, like I said, so I'm interested in hearing from

17  you on that or if you have any other suggestions, I would be

18  happy to hear from you.

19       (Brief pause.)

20       **THE COURT:**  Let me add one more thing.

21       The jurors mentioned to Kristen that a juror has a

22  doctor's appointment at 8:30 a.m. tomorrow morning.  So if --

23  assuming they come back and resume deliberations tomorrow, they

24  won't come back until 11:00 o'clock tomorrow morning.

25       (Brief pause.)

PROCEEDINGS

1          **THE COURT:**  Go ahead, Mr. Lee.

2          **MR. LEE:**  Yes, your Honor.

3      I think our preference -- in light of the fact that in the

4   scheme of things they haven't been deliberating that long and

5   they haven't indicated that they are, in fact, deadlocked, I

6   think our preference would be simply to give them -- take

7   Option 1, which is to indicate that it's not unusual and to

8   encourage them to continue to deliberate and to preserve the

9   option of an *Allen* charge for the event if and when they should

10  come back and indicate that they are truly deadlocked.

11         **MR. SEALS:**  Defendants would prefer the *Allen*

12  instruction.

13         One of our concerns, I guess especially in light of the

14  fact that one of the jurors has a doctor's appointment tomorrow

15  morning, would be that then if they came and started

16  deliberating around lunch time tomorrow, likely if -- if we did

17  have to get into a damages phase of the trial, then that means

18  that would likely occur on Wednesday.  The jury would then get

19  another verdict form Wednesday afternoon, at best, going into

20  the Thanksgiving weekend.  You know, people have pre-planned

21  vacations after Thanksgiving.  So there would obviously be some

22  difficulty there.

23         We believe it would be appropriate to give the *Allen*

24  instruction at this time.

25         **THE COURT:**  I mean, what if I -- if I gave this

PROCEEDINGS

1   Instruction 3.5, I guess what I would do is I would replace the

2   first paragraph because, as Mr. Lee points out, they haven't

3   exactly said they have been unable to agree upon a verdict.

4   They said they have -- they are having extreme difficulty.

5       What if I -- what if I just replaced the first paragraph

6   of Model Jury Instruction 3.5 with my proposed thing about it

7   not being uncommon.  What I wrote down here is:

8           "It is not uncommon for a conscientious jury to

9           need more than one day of deliberations.  I suggest

10          that you resume your deliberations tomorrow."

11      And then just the rest of that instruction.

12          "As jurors you have a duty to discuss the case

13          with one another," blah, blah, blah, and just include

14          the rest of that instruction.

15      I mean, in the -- particularly in the context of this

16  case, how -- how much of a concern does this language actually

17  present?  I mean, what's the harm with giving the instruction

18  now?

19          **MR. LEE:**  I don't think it's -- it's not so much that

20  there is a concern about giving the instruction.  I think at a

21  certain point we would be advocating giving the instruction.  I

22  think it's just -- you know, is it ripe to give the instruction

23  now?

24          **THE COURT:**  I mean, I would be concerned about giving

25  the -- like, let's say, it were 3:00 o'clock and they were

1  continuing to deliberate today.  I would say:  You know what?

2  It's too early right now and it's not a good time to give the

3  *Allen* instruction because they may only be planning on being

4  there for another half hour or an hour today, and that sort of

5  built-in time pressure, combined with the *Allen* instruction,

6  could be kind of problematic.

7       But my inclination, as we're talking about it, is that

8  because I'm telling them to go home and I'm giving them this

9  instruction, it -- it feels a lot less problematic from the

10  standpoint of coercion.

11      So I guess I would be inclined to take the defendant's

12  suggestion and give them the combination of my language and the

13  *Allen* instruction now.  And they can think about it and they

14  will have plenty of time to think about it overnight and

15  they'll come back fresh tomorrow.

16          MR. LEE:  That's fine, your Honor.

17          MR. SEALS:  Yes, your Honor.

18          THE COURT:  I'm going to do that.  So I'm going to --

19  and just for the record, to be totally clear, I'll read it one

20  more time to you so that if you want to make any further

21  language suggestions you can.

22      But my proposal is that once I leave, we'll go type it up

23  and we'll just send it in to the jury and we'll put it in the

24  record.  We won't come back and show it to you before giving it

25  to them.  So I'm going to propose that I read it again one time

1  right now.

2        **MR. LEE:**  Okay.  Okay.

3        **THE COURT:**  So I would say:

4        "It is not uncommon for a conscientious jury to

5     need more than one day of deliberations.  I suggest

6     that you resume your deliberations tomorrow."

7        Now, should I say I "suggest" or should I say I "instruct"

8  you that resume your deliberations tomorrow?

9        **MR. SEALS:**  Defendants -- I believe defendants would

10  prefer "suggest" on the chance that they may be willing to stay

11  later today and continue deliberating.

12        **MR. LEE:**  That would be fine with us as well.

13        **THE COURT:**  Yes?

14        **MR. LEE:**  Yes.

15        **THE COURT:**  Okay.  And then I would give the second,

16  third and fourth paragraphs of Instruction 3.5.

17        So I wouldn't give the first paragraph and I wouldn't give

18  the last paragraph, which consists of one sentence which says:

19        "You may now retire and continue your

20     deliberations."

21        **MR. SEALS:**  No objections from defendants.

22        **MR. LEE:**  No objections, your Honor.

23        **THE COURT:**  Okay.  That's what I will do then.

24        You know, stick around until you -- you have a feeling

25  they are going to go home, but stick around until learn that

PROCEEDINGS

1    they have gone home.

2              MR. LEE:  Okay.

3              MR. SEALS:  Thank you, your Honor.

4              THE COURT:  And when I say "stick around," I don't

5    mean you have to stay in the courtroom.  Just stay within

6    shouting distance.

7              THE CLERK:  Court is in recess.

8         (Whereupon at 4:08 p.m. further proceedings were

9          adjourned until Tuesday, November 24, 20156 at 11:00

10         a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Debra L. Pas*

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Monday, November 23, 2015