Volume 6

Pages 778 - 806

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

JESSE PEREZ,                         )
                                     )
            Plaintiff,               )
                                     )
  VS.                                ) No. C 13-5359 VC
                                     )
A. GATES, et al,                     )
                                     )  San Francisco, California
            Defendants.              )  Tuesday
                                     )  November 24, 2015
_____)  11:00 a.m.

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          WILMER CUTLER PICKERING HALE DORR, LLP
                           350 South Grand Avenue
                           Suite 2100
                           Los Angeles, California 90071
                     BY:   **RANDALL ROSS LEE, ESQ.**
                           **MATTHEW DONALD BENEDETTO, ESQ.**
                           **KATHLEEN BRIDGET MORAN, ESQ.**


**For Defendant:**          STATE OF CALIFORNIA
                           Office of the Attorney General
                           455 Golden Gate Avenue
                           Suite 11000
                           San Francisco, California 94102
                     BY:   **JENNIFER J. NYGAARD, ESQ.**
                           **ELLIOTT THOMAS SEALS, ESQ.**



*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 Official Reporter - US District Court
                 Computerized Transcription By Eclipse

PROCEEDINGS

```
 1                   P R O C E E D I N G S
 2   NOVEMBER 24, 2015                          11:24 A.M.
 3        (Proceedings held in open court, outside
 4         the presence and hearing of the jury.)
 5           THE CLERK:  Calling Case No. 13-CV-5359, Perez v.
 6   Gates, et al.
 7        Counsel, please state your appearances.
 8           MR. LEE:  Randall Lee, Matthew Benedetto and Katie
 9   Moran for Mr. Perez, who is present.
10           THE COURT:  Good morning.
11           MS. NYGAARD:  Good morning.  Jennifer Nygaard and
12   Elliott Seals from the California Attorney General's Office
13   representing the five defendants, who are all still present
14   here.
15           THE COURT:  Good morning.
16           MS. NYGAARD:  Good morning.
17           THE COURT:  I'm handing to Kristen my proposed
18   response to their question.
19        (Whereupon document was tendered to counsel.)
20           THE COURT:  You got a copy of the question, right?
21           MR. LEE:  Yes.
22           MS. NYGAARD:  Yes.
23        (Brief pause.)
24           MR. SEALS:  Good morning, your Honor.
25           THE COURT:  Good morning.
```

PROCEEDINGS

```
1          MR. LEE:  Your Honor, from our perspective, this
2     seems like an appropriate response.
3          I would suggest that it may be worth adding one additional
4     mention, just to remind the jurors that ultimately they need to
5     rely on their memories of the evidence in the record.
6          THE COURT:  Okay.  There was actually something --
7     there was some language to that effect in the Ninth Circuit
8     instruction that I think I didn't include in my proposed
9     response.  I could just incorporate that.
10         MR. LEE:  Right.  That would be our proposal.
11         MS. NYGAARD:  Defendants would actually object to the
12    readback portion of the response.  We don't think it's
13    necessarily appropriate.
14         And the model jury instructions don't mention readbacks.
15    Based on my understanding, it's sort of been discouraged in the
16    past by some Courts.
17         THE COURT:  Okay.  So are you saying that you think
18    it would be improper to allow the jury to hear readback?  It
19    would be, like, legally erroneous?
20         MR. SEALS:  I think it's our position that -- yes,
21    that it would be improper to read back portions of the
22    transcript to the jury.
23         THE COURT:  Okay.  I take it you don't have at your
24    fingertips a case cite for that proposition?
25         MR. SEALS:  I have a case.  I don't fully -- I
```

PROCEEDINGS

```
 1   haven't fully read the case, just as a warning.
 2               THE COURT:  Which case?
 3               MR. SEALS:  United States v Damsky, 740 F.2d, 134.
 4   It's a Second Circuit case.
 5               THE COURT:  And that stands for the proposition that,
 6   what?
 7               MR. SEALS:  The practice -- it stands for the
 8   proposition that readbacks of testimony have been discouraged.
 9               THE COURT:  Discouraged?
10               MR. SEALS:  Sorry.  I think it's the inverse
11   actually.  I apologize.
12       Let me consult with my co-counsel for one second.
13       (Discussion held off the record between defense
14         counsel.)
15               MR. SEALS:  Okay, your Honor.  Thank you for making
16   me read that one more time.  Defendants withdraw their
17   objection, I guess.
18               THE COURT:  So what's the language from -- what's the
19   language from the -- I didn't bring the Ninth Circuit model
20   instruction out with me.  What's the language about independent
21   memory controlling?
22               MR. LEE:  Well, there is a line from the taking notes
23   instruction, 1.14, which could probably be adapted.  That one
24   says:
25               "Whether or not you take notes, you should rely
```

```
 1        on your own memory of the evidence.  Notes are only
 2        to assist your memory.  You should not be overly
 3        influenced by your notes or those of your fellow
 4        jurors."
 5        So I think the concept is similar, which is that --
 6            THE COURT:  Your memory controls rather than the
 7   readback?
 8            MR. LEE:  Well, I guess it's your memory of the
 9   evidence as a whole, really.  It's -- it's consistent with your
10   instruction not to consider any portion of the testimony in
11   isolation.
12            THE COURT:  Okay.  Let me just pull up the model.  I
13   think there was actually something in that, in that very
14   instruction about readbacks.
15        On the issue of memory, I'm just going to go back and
16   look.
17        (Brief pause.)
18            MR. LEE:  Yeah.  I mean it says:
19            "During deliberations, you will have to make your
20        decision based on what you recall of the evidence.
21        You will not have a transcript of the trial."
22            THE COURT:  Yeah.  It says "your recollection" in
23   3.2(a), which governs readback or playback.  It says:
24            "Your recollection and understanding of the
25        testimony controls."
```

PROCEEDINGS

```
1        I just think I'll add that sentence at the end.
2            "Your recollection and understanding of the
3        testimony controls."
4            MR. SEALS:  Did you say 3.2, your Honor?
5            THE COURT:  3.2(a).
6        I wonder if you have an outdated version.
7            MS. NYGAARD:  Yeah.  Ours must be outdated.
8            THE COURT:  Well, it just includes a sentence that
9  says, literally:
10           "Your recollection and understanding of the
11       testimony controls."
12       So I propose to add that at the end.
13           MR. SEALS:  That's fine with the defendants.
14           MR. LEE:  That would be fine with us.
15           THE COURT:  Frankly, I don't understand why we just
16 don't tell them that at the outset; that they can ask for
17 readback.  I don't see what's wrong with -- I don't understand
18 why we sort of hide the ball from them in that regard.
19       But in any event, I will -- I'll send them back that note
20 and I assume they will promptly request readback of a portion
21 of the testimony.
22       Sorry.  Did you have something?
23           MR. SEALS:  So with regard to the portion that they
24 request be read back, will the parties be given an opportunity
25 to --
```

PROCEEDINGS

```
1          THE COURT:  Oh, of course.  I will have you back here
2   to talk about whether you think anything should be added for
3   context.
4          And then an additional question is whether they should be
5   required to hear the readback in open court or whether the
6   court reporter can go in to the jury room and do it.  In
7   criminal cases, I think that it has to be -- I think it's
8   required that it be in open court.  I think if both parties
9   consent in a civil case, it could be done in the jury room with
10  the court reporter.
11         I will say that my personal view is that it would be
12  better to have the readback take place in open court because
13  it -- there's just sort of more control over the process that
14  way.
15         But if both sides were to consent to having it done in the
16  jury room, I'm -- I wouldn't override that.
17              MR. LEE:  Okay.
18              THE COURT:  So think about that --
19              MR. LEE:  Okay.  Will do.
20              THE COURT:  -- while we wait for their request.
21  Thank you.
22              MR. LEE:  Okay.  Thank you.
23              MR. SEALS:  Thank you.
24              THE CLERK:  Court is in recess.
25
```

```
 1          (Whereupon proceedings were adjourned for jury

 2           deliberations from 11:34 a.m. until 1:11 p.m.)

 3          THE COURT:  You don't need to make your appearances

 4     again.  We are all painfully aware of who each other is at this

 5     point.

 6          Kristen is giving you my proposed response to the jury.

 7          (Whereupon document was tendered to counsel.)

 8          THE COURT:  And the reason I sought clarification,

 9     propose to seek clarification from them about whether they want

10     the entire testimony of these two witnesses read back is, I

11     want to give them a chance.  I mean, if they can identify

12     something really narrow that would obviate the need to do

13     readback of the entire testimony, it seems like we should

14     consider that at least.  Give you both an opportunity to

15     address it after they specify what they want to hear.

16          But I thought I should just clarify that with them before

17     proceeding on the testimony of those two witnesses.

18          (Brief pause.)

19          MR. LEE:  Your Honor, we're comfortable with the

20     Court's proposed response.

21          MR. SEALS:  Defendants are comfortable, also.  We

22     would object to the over-breadth of what they requested be read

23     back, but if they can narrow it down, we think that may be

24     appropriate.

25          We're also curious about the Court's feeling about
```

PROCEEDINGS

1  providing any further instruction to the jury regarding the

2  timing of their deliberations or something regarding -- you

3  now, we gave them the *Allen* charge yesterday.

4       THE COURT:  Do you mean you -- are you suggesting you

5  want me to tell them that there is some time limit or

6  something?

7       MR. SEALS:  No, that's not what I'm suggesting, your

8  Honor.  Just in terms of their -- how they should be -- I guess

9  maybe something from the *Allen* charge regarding their need to

10 maintain their -- to vote -- to not violate their conscience

11 in anything --

12      THE COURT:  All they have done here is ask for

13 readback.  I mean, I don't think any indication has been given

14 that they need any further instruction with respect to the

15 possibility that they are in disagreement.

16      MR. SEALS:  Maybe I'll address that further if their

17 response is something that requires anything further.

18      THE COURT:  The only additional question I have is --

19 you know, we could be a little more suggestive and say:  Do you

20 mean that you wish to have Pimentel's entire testimony read

21 back to you or is there some portion you request?

22      And do you mean that you wish to have Perez's entire

23 testimony from the first day read back to you or is there

24 something portion you request?

25      Do you want me to add the "or is there some portion you

1  request"?

2          MR. LEE:  I think in light of the circumstances, that

3  would make sense.

4          THE COURT:  Okay.

5          MR. SEALS:  Yes, your Honor.

6          THE COURT:  We'll see what they come up with.  I

7  would say probably -- I'll proceed with my criminal calendar

8  right now, which is scheduled for 1:00 o'clock, but I would say

9  stick around.  Just hang out.  We could be interrupted as soon

10  as another note comes back.  We could interrupt the criminal

11  calendar to deal with that.  Okay?

12          MR. LEE:  All right.

13          THE COURT:  All right.  So I'll send this back to

14  them.  I'll be back in just a minute to begin the criminal

15  calendar.

16          MR. LEE:  Okay.

17      (Whereupon proceedings were adjourned for jury

18       deliberations from 1:16 p.m. until 2:37 p.m.)

19          THE CLERK:  Remain seated.  Court is back in session.

20      (Whereupon document was tendered to counsel.)

21          THE COURT:  Go ahead and take as much time as you

22  need to review what I am proposing.

23      (Brief pause.)

24          THE COURT:  When is your flight, Mr. Lee?

25          MR. LEE:  6:30 this evening.

PROCEEDINGS

```
 1          THE COURT:  This evening?

 2          MR. LEE:  Well, back to L.A.  And then I'm -- as

 3  Kristen may have mentioned, I'm going to visit my son in

 4  New York, tomorrow.

 5      I mean, it does -- this does raise -- if we encourage them

 6  to come back tomorrow, it does raise -- if there is to be a

 7  damages portion, then there is actually -- it raises the

 8  likelihood that this will not conclude by the end of the day

 9  tomorrow.

10          THE COURT:  Yeah.  And then we'll just have to deal

11  with that.

12      I mean, are you suggesting that I remove the reference to

13  coming back to tomorrow?  I mean, I certainly wouldn't want to

14  suggest to them that they have to reach a verdict -- they have

15  to make a final decision on whether they can reach a verdict

16  today.

17          MR. LEE:  Right, right.

18          THE COURT:  If they come to the conclusion that they

19  ought to keep deliberating tomorrow, I wouldn't want to

20  preclude them from doing that.

21          MR. LEE:  Agreed.  Agreed.

22          THE COURT:  Okay?

23          MR. SEALS:  I think defendants' position, we believe

24  the first sentence of this is appropriate and we're not sure if

25  the rest is necessary.  We think that it's sort of a
```

1  reiteration of previous responses that have been given to the

2  jury and my understanding is that *Allen* instructions are

3  generally only given once.

4      So it's not a full *Allen* instruction, but it's kind of

5  like a reiteration, and I feel that the first sentence properly

6  responds to their question.

7          **THE COURT:**  Mr. Lee, any response to that?

8          **MR. LEE:**  Well, I certainly don't think it's improper

9  to give this.  I mean, I think that the notion of multiple

10 *Allen* instructions is really limited to the criminal context.

11 So I don't think it's improper.

12     I mean, maybe to address Mr. Seals' point, we could -- at

13 the end of this second sentence where we encourage the jury to

14 essentially continue deliberating, the Court could add a phrase

15 that says something to the effect of "if you believe that

16 further deliberations might be fruitful," or something like

17 that.  So it softens it just ever so slightly.  And then

18 continue with the balance of the response as drafted.

19         **MR. SEALS:**  I feel that the first sentence still,

20 with the, "You must keep deliberating with respect to the

21 issues," it implies that they still have the opportunity to

22 continue deliberating.  There is no -- there is no pressure on

23 them to stop in that first sentence.

24     (Brief pause.)

25         **THE COURT:**  I mean, I agree that there is no pressure

1   on them to stop -- the thing that I find weird about this is

2   that it wasn't that long ago that they were asking questions

3   about readback and, you know, I -- and we asked a clarification

4   question of them about what they want read back and then they

5   come back with this.

6       And that leaves me like, you know, a little concerned that

7   maybe they haven't made their -- you know, their absolute best

8   effort.  And that's why I was thinking that, you know, instead

9   of just giving them that first sentence, that we sort of try to

10  remind them of the importance of reaching a unanimous verdict

11  without -- you know, without saying:  Hey, if you don't reach a

12  unanimous verdict with respect to some of these defendants,

13  there is going to be a mistrial, and we might have to do all

14  this all over again, and we're going to waste a bunch of money.

15  I mean, we wouldn't want to say something like that.

16      But sort of given the -- you know, and I don't give

17  this -- I don't -- you know, I'm not suggesting that sort of

18  reflexively.  I'm suggesting, you know, sort of based on the

19  sequence of notes that has come back from the jury.  And the

20  concern that, you know, it wasn't that long ago that they were

21  contemplating doing readback and now all of a sudden they might

22  be asking permission to throw up their hands.

23      I was just thinking given that -- and it's not like -- I

24  mean, what's today?  Tuesday?

25          **MR. LEE:**  Tuesday.

PROCEEDINGS

1          MR. SEALS:  Tuesday.

2          THE COURT:  They have been deliberating for two days.

3    This is a civil rights case involving five defendants.  I mean,

4    you know, I don't know if it's that, like, crazy for them to be

5    deliberating for two days on this and for them to come back and

6    deliberate for another day.

7          MR. LEE:  I would agree with all of that, your Honor.

8    I don't see any harm in giving this instruction.

9          THE COURT:  But I -- I liked your suggestion of

10   adding at the end of second sentence, "if you believe that

11   further deliberation would have a" -- I slightly tweaked what

12   you suggested.  I wrote:

13          "...if you believe that further deliberation

14      would have a chance of succeeding."

15          MR. LEE:  Sounds good.

16          MR. SEALS:  I think defendants would stand by our

17   objection.

18          THE COURT:  Okay.  Okay.  I'm going to give them

19   this.  I'm going to give them this instruction.

20          MR. LEE:  Okay.

21          THE COURT:  As revised.  As I just recited.

22          MR. LEE:  Okay.  Thank you, your Honor.

23          THE COURT:  Thank you.

24          THE CLERK:  Court is in recess.

25

PROCEEDINGS

1          (Whereupon proceedings were adjourned for jury

2       deliberations from 2:46 p.m. until 4:33 p.m.)

3          **THE COURT:**  Okay.  So I'm not -- I believe Kristen

4   didn't give you this note, but what the jury has said is --

5   they have indicated on this form that they have reached a

6   unanimous verdict, but then they have a note that says:

7          "We're hopelessly deadlocked on one charge for

8       two defendants."

9      I think that's the end of the matter.  I mean, does

10  anybody disagree?

11         **MR. LEE:**  No, your Honor.

12         **MS. NYGAARD:**  No.

13         **THE COURT:**  Obviously, there could be any number of

14  permutations to this, but one question that had me scratching

15  my head is if the -- now what they say is:

16         "We're hopelessly deadlocked on one charge for

17      two defendants."

18      I don't know if they consider the -- the malicious thing

19  to be a charge, but if they are deadlocked on maliciousness

20  with respect to two defendants, how would we deal with that?

21      I mean, this is sort of a -- I'm sort of going back to

22  when we put this together before the trial and I had this sort

23  of nagging doubt about whether we should put maliciousness in

24  the first phase of the trial.  This question sort of makes me

25  think that we probably shouldn't have.  And we may be worrying

PROCEEDINGS

1    about nothing.  That may not be what -- where the jury is.

2        I think the answer is that if the jury is deadlocked on

3    maliciousness, we would not go forward at least with respect to

4    those two defendants on punitive damages and there would have

5    to be -- I guess there would have to be another trial with

6    another jury on the question of punitive damages at a later

7    time.

8        Does that sound right?

9            MR. LEE:  I think that sounds right, your Honor.

10           MR. SEALS:  I believe so, your Honor.

11           THE COURT:  Which would be a little bit weird, but --

12   and unfortunate.  But, okay.

13       With that, Kristen, why don't you bring in the jury?

14       One other thing.  If -- will there be -- I mean, before I

15   declare a mistrial, is there anything that anybody is going to

16   want to say to me or can I just go ahead and declare a

17   mistrial?  Do you want to do a quick sidebar to see if there is

18   any sort of issue you want to raise before I declare a

19   mistrial?

20           MR. SEALS:  I think the defendants would appreciate a

21   sidebar, just for a short opportunity.

22           THE COURT:  Okay.  All right.  Very good.

23       (Brief pause.)

24           THE COURT:  Do you want me to poll the jury on the

25   deadlock or can I just ask the foreperson?

PROCEEDINGS

```
 1          MR. LEE:  No need to poll the jury on our account.

 2      (Discussion held off the record between defense

 3       counsel.)

 4          THE COURT:  Not where they stand, just whether they

 5  all believe they are deadlocked.

 6          MR. SEALS:  No.

 7          THE COURT:  Just the foreperson?

 8          MR. SEALS:  Yes.

 9          THE COURT:  Okay.

10      (Jury enters courtroom at 4:37 p.m.)

11          THE COURT:  Please be seated.

12      Okay.  My understanding is that the jury has concluded its

13  deliberations.

14      Ms. Williams, are you the foreperson?

15          FOREPERSON WILLIAMS:  Yes.

16          THE COURT:  And you've concluded your deliberations?

17          FOREPERSON WILLIAMS:  Yes.

18          THE COURT:  And you have indicated in a note that the

19  jury is hopelessly deadlocked with respect to one count for two

20  of the defendants, is that correct?

21          FOREPERSON WILLIAMS:  Yes.

22          THE COURT:  You are of the view that the jury is

23  hopelessly deadlocked with respect to that one count for those

24  two defendants?

25          FOREPERSON WILLIAMS:  Yes.
```

PROCEEDINGS

1       **THE COURT:**  And is it each juror's view that the jury

2   is hopelessly deadlocked with respect to that one count for the

3   two defendants?

4       **FOREPERSON WILLIAMS:**  Yes.

5       (Jury panel nodding affirmatively.)

6       **THE COURT:**  Okay.  For the record, I'm seeing

7   everybody nodding their head.

8       Okay.  Why don't you give me the verdict form?

9       (Whereupon, document was tendered to the Court.)

10      **THE COURT:**  Okay, Ms. Melen, you can read the

11  verdict?

12      **THE CLERK:**  Ladies and gentlemen of the jury, listen

13  to your verdict as it will stand recorded.  Omitting the court

14  and caption.

15      Based on the Court's instruction about the applicable law,

16  we, the jury, unanimously answer the questions submitted to us

17  as follows:

18      Question 1:  Did the plaintiff, Jesse Perez, prove, by a

19  preponderance of the evidence, that one or more of the

20  defendants violated Perez's First Amendment rights?

21      Sean Burris:  No.

22      Anthony Gates:  Yes.

23      Daniel Gongora:  Yes.

24      Eric Healy:  Yes.

25      Guillermo Pimentel:  Yes.

1       Question 2:  Did the plaintiff, Jesse Perez, prove, by a

2  preponderance of the evidence, that two or more of the

3  defendants conspired to violate Perez's First Amendment rights?

4       Sean Burris:  No.

5       Anthony Gates:  No answer.

6       Daniel Gongora:  No.

7       Eric Healy:  No answer.

8       By Pimentel:  No.

9       If your answer to Questions 1 or 2 is "yes" as to any

10  defendant, proceed to Question 3.

11       Question 3:  Do you find, by a preponderance of the

12  evidence, that one or more of the following defendant's conduct

13  was malicious, oppressive or in reckless disregard of Plaintiff

14  Jesse Perez's constitutional rights?

15       Sean Burris:  No answer.

16       Anthony Gates:  Yes.

17       Daniel Gongora:  No.

18       Eric Healy:  No.

19       Guillermo Pimentel:  No.

20       The presiding juror shall sign and date this special

21  verdict form and return it to the Court.  Dated November 24th,

22  2015.  By Dana Williams, presiding juror.

23       Is this your true and correct verdict?

24       **FOREPERSON WILLIAMS:**  Yes.

25       (Jury panel responded affirmatively.)

PROCEEDINGS

1          **THE COURT:**  The record will reflect that each juror
2    responded to that question with a "yes."
3          Ms. Melen, could I have that verdict form?
4          (Whereupon, document was tendered to the Court.)
5          **THE COURT:**  Thank you.
6          Okay.  So thank you, ladies and gentlemen.  I'm going to
7    have a brief sidebar with the lawyers right now, if you can
8    just give me one moment.
9          (Proceedings held at sidebar.)
10          **THE COURT:**  Okay.  So I will declare a mistrial with
11    respect to the Gates and Healy with respect to Count 2.
12          And that would be the -- that would be it, right?
13          **MR. BENEDETTO:**  Yes.
14          **THE COURT:**  Is there anything anyone wants to say
15    about that?
16          **MR. SEALS:**  Not about that your Honor, but the
17    defendants would like the jury to be polled on the responses to
18    the questions.
19          **THE COURT:**  Okay.
20          **MR. LEE:**  We don't have anything to add, your Honor.
21          **THE COURT:**  I'm going to poll them just by saying:
22    Does that accurately reflect the verdict?  I'm not polling them
23    about what their answer to the question is.
24          **MR. SEALS:**  Correct.  But each individual juror.
25          **THE COURT:**  Okay.

```
 1          What should I tell them about how long -- how long the
 2    presentation is going to be tomorrow information?
 3               MR. BENEDETTO:  45 minutes, max, from us.
 4               MR. SEALS:  I'd say 45 minutes.
 5               MS. NYGAARD:  Just punitive damages, an hour.  An
 6    hour max.
 7               THE COURT:  Okay.  All right.  Anything else?
 8               MR. BENEDETTO:  No.
 9               MR. LEE:  No, your Honor.  Thanks.
10          (Proceedings held in open court.)
11               THE COURT:  So to the jurors, the parties have
12    requested that I poll the jury.  Even though each of you shook
13    your head "yes" in response to the question whether this
14    reflected the jury's conclusions, I need to ask you each
15    individually whether the verdict form that Ms. Melen read
16    accurately reflects the jury's conclusions.  I'm not asking
17    whether they accurately reflected your own personal
18    conclusions, and I'm not asking you how you come out one way or
19    another on these things.  I'm only asking you whether the
20    verdict form that Ms. Melen read accurately reflects where the
21    jury came out on everything.
22          Does that make sense?
23          (Jury panel nodding affirmatively.)
24               THE COURT:  Okay.  So, Ms. Williams, did the verdict
25    form, as Ms. Melen read it, accurately reflect where the jury
```

PROCEEDINGS

```
 1  came out on all the questions?

 2              FOREPERSON WILLIAMS:  Yes.

 3              THE COURT:  Ms. Branson?

 4              JUROR BRANSON:  Yes.

 5              THE COURT:  Mr. Miller?

 6              JUROR MILLER:  Yes.

 7              THE COURT:  Ms. Jones?

 8              JUROR JONES:  Yes.

 9              THE COURT:  Ms. Huang?

10              JUROR HUANG:  Yes.

11              THE COURT:  Mr. Galbreth?

12              JUROR GALBRETH:  Yes.

13              THE COURT:  Mr. North?

14              JUROR NORTH:  Yes.

15              THE COURT:  Mr. Fernandez?

16              JUROR FERNANDEZ:  Yes.

17              THE COURT:  Okay.  So I am then declaring a mistrial

18  on Question 2 on the conspiracy claim with respect to Anthony

19  Gates and Eric Healy.

20      Now, I have some slightly bad news for you, and this is

21  a -- this is something that is unavoidable.  We don't really

22  know how -- we judges sort of scratch our heads and try to

23  figure out how to sort of communicate with a jury about this

24  and preserve the fairness for the parties, and we haven't

25  figured out a great way to do it yet.
```

1    But there is going to be a small amount of additional

2  evidence that you need to consider, and you need to consider

3  that small amount of additional evidence in connection with the

4  question of damages.  What are the damages, if any, to which

5  Mr. Perez is entitled in this case.

6    And some of the evidence that you will hear -- although

7  it's a very small amount of evidence, some of the evidence that

8  you will hear is personal in nature to the defendants.  We are

9  concerned that some of the evidence you hear in connection with

10  damages sort of interferes with the jury's consideration of the

11  liability question.  So that's why we separate it out like

12  that.

13    So I sort of apologize for springing that upon you.  I

14  discussed it just now with the lawyers and they have informed

15  me that -- the plaintiff's lawyers have informed me that their

16  presentation, their evidentiary presentation, will be no longer

17  than 45 minutes and the lawyers for the defendants have

18  informed me that their evidentiary presentation will be no

19  longer than an hour.  I expect it to be -- I expect that for

20  both sides it will be shorter than that, but they -- you know,

21  always try to sort of give themselves a little room in

22  providing these estimates.

23    And then there will be very, very, very short closing

24  arguments.  I'm thinking, like, you know, five to ten minutes

25  for each side.

PROCEEDINGS

```
 1      Then you will deliberate on the question of damages.  You
 2  will get a set of instructions on damages.  I don't anticipate
 3  that it will be nearly as complicated as what you've done thus
 4  far.
 5      So I want to thank you for the, obviously, very hard work
 6  that you've done so far and the very conscientious effort that
 7  you've put in to your deliberations and the attentiveness that
 8  you've shown during the case so far.  I just ask you to be
 9  patient with me and give me just a little bit more time and
10  come back tomorrow.  We'll get you breakfast.  We'll get you
11  lunch.  I'm sure you were horrified at the thought of missing
12  another free lunch from the District Court.
13      And with that, I suggest that you -- well, not "I
14  suggest."  We're done for today and we'll see you back here
15  tomorrow morning at 8:30 for the beginning of presentation of
16  evidence for what I assure you will be the last phase of this
17  trial.
18      Thank you.
19      (Jury exits courtroom at 4:49 p.m.)
20      THE COURT:  Was that a suicidal scream I heard?
21      Okay.  So we will see -- I guess we need to think about --
22  we need to prepare jury instructions for damages.  We'll spend
23  this evening looking through what the parties have submitted
24  and put something together and have something for you.  We'll
25  either file it this evening so you can look at it this evening
```

PROCEEDINGS

1   or we'll give it to you first thing tomorrow morning.

2       We'll look at the verdict form that you proposed for

3   damages.

4       Is there anything else that we can do for you, other than

5   looking at the jury instructions and the verdict form?

6           **MS. NYGAARD:**  Your Honor, defendants have an issue to

7   bring up.

8       The Court had issued an order at the beginning of this

9   case precluding defendants from mentioning Mr. Perez's First

10  Amendment activities subsequent to the search because of the

11  chilling effect standard.  At this point we would be asking

12  permission to bring up that for the damages phase because we

13  believe it's very relevant, to the extent of Mr. Perez's

14  injuries, that he continued to write articles and get them

15  published.

16          **THE COURT:**  Yeah.  I mean, I -- I'll hear from the

17  plaintiff.

18          **MR. BENEDETTO:**  I mean, we intend to provide evidence

19  of Mr. Perez's First Amendment activity that pre-dates the

20  search and we think it is a subjective -- you know, the harm is

21  actual harm.  So we -- you know, post-October 2012 activity I

22  think is admissible.

23          **THE COURT:**  Is admissible?

24          **MR. BENEDETTO:**  Yes.

25          **THE COURT:**  Yeah, yeah.

1          **MS. NYGAARD:**  Although defendants would still be

2    asking that the actual articles that he wrote not be admitted,

3    just the subject matter that he did write articles.  Under

4    Rule 403 we find the contents of the articles that he wrote

5    would be overly prejudicial to the jury.

6          **THE COURT:**  Mr. Benedetto doesn't seem to be

7    disagreeing with you, so I will cut you off.

8          **MR. BENEDETTO:**  That's correct.

9          **THE COURT:**  That's correct, okay.

10         So, plus, I mean, I think we have an obligation, sort of

11   given how long the jury has spent and given how conscientious

12   they have been in their deliberations, regardless of what we

13   think of the correctness of the outcome, they have certainly

14   put in a great effort and I think we sort of have a special

15   obligation to be as efficient as we can in the presentation of

16   evidence.

17         And in that regard I -- you know, although there -- there

18   may be some relevance to his prior First Amendment activity and

19   his subsequent First Amendment activity, I don't know if

20   it's -- you know, I don't really know how much time needs to be

21   spent on that sort of thing.  I mean, it seems like it's five

22   minutes worth of evidence.  You can sort of establish that.

23         Anything else?

24         **MR. BENEDETTO:**  A precise limit on the closing might

25   be helpful.  Ten minutes?

PROCEEDINGS

```
 1          THE COURT:  Certainly no more than 10 minutes.

 2          MR. BENEDETTO:  Okay.  I think 10 minutes -- 10

 3   minutes is fine.

 4       Is that okay, Ms. Nygaard?

 5          MS. NYGAARD:  Yes.  And will there be a brief opening

 6   statement also?

 7          THE COURT:  I don't think it's necessary.

 8          MS. NYGAARD:  Okay.

 9          THE COURT:  Two minutes for rebuttal?

10          MR. BENEDETTO:  That's fine.

11          THE COURT:  Okay.

12          MR. BENEDETTO:  One, I guess, additional item that we

13   would flag for the Court has to do with the punitive damages,

14   the presentation of evidence with respect to Officer Gates'

15   personal finances and whether by putting those finances at

16   issue, the indemnification issue is -- may be broached.  There

17   is -- we have found --

18          THE COURT:  So I was actually pondering this.  I

19   mean, when I was working in the San Francisco City Attorney's

20   Office and represented police officers, I could have sworn that

21   we did not indemnify our officers for punitive damages.

22          MS. NYGAARD:  It's in the Government Code.  The

23   California Government Code actually precludes the state or CDCR

24   from paying punitive damages.  They would have to go to the

25   state legislature and seek permission, et cetera.
```

```
 1        So we feel that putting -- Officer Gates' financial
 2   information is very relevant because there is no guarantee the
 3   state would pay for it and they are precluded from doing it
 4   without legislative action.
 5            THE COURT:  So I don't understand what is -- what's
 6   the -- what do you want the jury to know or not know about
 7   indemnification?
 8            MR. BENEDETTO:  Right.  We're not going to imply that
 9   there was a mandatory indemnification statute in place for
10   purposes of punitive damages, but whether the defendant could
11   be cross examined as to the possibility that those damages
12   could be indemnified.
13            THE COURT:  No.  I'm not going to allow that.
14            MR. BENEDETTO:  Okay.
15            THE COURT:  Anything else?
16            MS. NYGAARD:  Nothing.
17            MR. BENEDETTO:  Nothing.  No.
18            THE COURT:  Okay.  We'll see you tomorrow at 8:30.
19   I'll be here -- why doesn't everybody plan on being here at
20   8:00 o'clock.
21        We might consider pre-instructing the jury, if we have it
22   ready and we can all sort of reach agreement on the
23   instructions.  That might make it a little more helpful for
24   them in terms of considering the evidence that comes in.  We
25   can think about that.  But at a minimum everybody should be
```

```
1   here at 8:00 o'clock tomorrow.

2            MR. BENEDETTO:  Okay.

3            THE COURT:  Thanks.

4            MS. NYGAARD:  Thank you.

5            THE CLERK:  Court is adjourned.

6        (Whereupon at 4:56 p.m. further proceedings were

7         adjourned until Wednesday, November 25, 2015 at

8         8:00 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF REPORTER


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, November 24, 2015